(March 12, 1924.)

## L. M. LYON, Respondent, v. THE CITY OF PAYETTE, Appellant.

### [224 Pac. 793.]

CONSTITUTIONAL LAW—MUNICIPAL CORPORATIONS—POWER TO DEFINE BOUNDARIES—DETACHMENT OF LANDS FROM MUNICIPALITY—LEGISLATIVE AND JUDICIAL FUNCTIONS—DELEGATION OF POWERS—JUDICIAL DISCRETION.

1. The power to establish municipal corporations and to enlarge and contract their boundaries is legislative.

2. It is a judicial function to hear a cause pending between adverse parties, to apply the law to the facts, and to make and render a judgment determining the rights of the parties.

3. Upon the finding by the court of the existence of the facts required by the statute for the detachment of agricultural lands from a municipality, the law makes it the duty of the court to render judgment detaching the lands.

4. A statute, directing the district court to render judgment detaching agricultural lands from a municipality upon the ascertainment by the court of the existence of the facts specified in the statute to be found before the judgment can be rendered, does not constitute a grant of legislative power to the court.

5. Article 4, chapter 169, title 32, of the Compiled Statutes, providing that upon the ascertainment of the existence of the facts therein mentioned, the district court shall render judgment detaching agricultural lands from a municipality, vests the court with no other discretion than to determine the existence of the facts, and does not constitute a delegation of a legislative power to a judicial officer.

38 Idaho.—45

6. A judgment of the district court detaching land from a municipality will be reversed where the evidence is not sufficient to establish the existence of all the facts required by the statute to exist in order to justify the rendition of the judgment.

APPEAL from the District Court of the Seventh Judicial District, for Payette County. Hon. B. S. Varian, Judge.

Proceedings to detach agricultural lands from a municipality. Judgment for plaintiff. *Reversed.*

A. O. Sutton, for Appellant.

Plaintiff's petition or complaint does not state facts sufficient to constitute a cause of action, nor to entitle plaintiff to the relief prayed for or any relief whatever. (Kerr's Pleading and Practice, sec. 820; *Miller v. Pine Mining Co.,* 3 Ida. 493, 35 Am. St. 289, 31 Pac. 803.)

The court had no jurisdiction of the subject of the action. (Art. 5, sec. 20, Const. of Idaho; *People v. Nevada,* 6 Cal. 143; *Stone v. Elkins,* 24 Cal. 125; *Forsyth v. Hammond,* 71 Fed. 443; *Brenke v. Borough of Belle Plaine,* 105 Minn. 84, 117 N. W. 157; *Glaspell v. Jamestown,* 11 N. D. 86, 88 N. W. 1023; *Winkler v. City of Hastings,* 85 Neb. 212, 122 N. W. 858.)

C. S., sec. 4105, is unconstitutional. (Art. 12, sec. 1, art. 2, sec. 1, Const. of Idaho; *Forsyth v. Hammond, supra; In re Brenke, supra; Winkler v. The City of Hastings, supra; Glaspell v. Jamestown, supra; People v. Nevada, supra; Stone v. Elkins, supra; Vernon v. San Bernardino County,* 142 Cal. 513, 76 Pac. 253; *City of Hutchinson v. Leimbach,* 68 Kan. 37, 104 Am. St. 384, 74 Pac. 598, 63 L. R. A. 630; *City of Galesburg v. Hawkinson,* 75 Ill. 153; *Territory v. Stewart,* 1 Wash. 98, 23 Pac. 405, 8 L. R. A. 106; *People v. Carpenter,* 24 N. Y. 86.)

T. A. Walters, for Respondent.

C. S., secs. 4101 to 4105, as amended by chap. 111, 1921 Sess. Laws, are constitutional. The legislature may pass laws by which it may determine and fix the causes, if found

to exist by a court to which the matter is referred by the legislature, for which territory may be disconnected from towns and cities. This is all the legislature did in enacting the above sections. (*Miller v. City of Pineville*, 121 Ky. 211, 89 S. W. 261; *In re Fullmer*, 33 Utah, 43, 92 Pac. 768; *Town of Edgewater v. Liebhardt*, 32 Colo. 307, 76 Pac. 366; *Young v. Salt Lake City*, 24 Utah, 321, 67 Pac. 1066; *Anaconda Mining Co. v. Town of Anaconda*, 33 Colo. 70, 80 Pac. 144; *City of Lebanon v. Knott*, 24 Ky. Law, 1992, 72 S. W. 790; *Peletier v. City of Ashton*, 12 S. D. 366, 81 N. W. 735; *Grover Hill v. McClure*, 27 Ohio C. C. 376.)

When facts required by statute have been properly established, the court must order the detachment. (See cases last above cited.)

Public utilities must confer a real or substantial benefit in order to warrant refusal to detach land from city. (*Morrison v. Lafayette*, 67 Colo. 220, 184 Pac. 301; *In re Fullmer, supra.*)

WM. E. LEE, J.—The district court of the seventh judicial district, for Payette county, heretofore made and entered a judgment detaching a tract of ten acres of land from the corporate limits of the city of Payette. Being dissatisfied with the judgment, the city has appealed, and urges, as grounds for reversing the judgment, first, that the law under which the proceeding was instituted is unconstitutional, and, second, that the evidence is insufficient to sustain the judgment.

The proceeding was instituted under the provisions of article 4, chapter 169, title 32, of the Compiled Statutes, as amended by chapter 111 of the Session Laws of 1921. Appellant contends that this article is in contravention of article 12, section 1; article 5, section 20; and article 2, section 1, of the constitution of the state of Idaho. Article 12, section 1, authorizes the legislature to provide, by general laws, for the incorporation, organization and classification of cities. Article 5, section 20, vests district courts with original jurisdiction in all cases at law and in equity, and

such appellate jurisdiction as may be conferred by the legislature. Article 2, section 1, divides the powers of the state government into three distinct departments; the legislative, executive and judicial, and it further provides that " . . . . No person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others, except as in this constitution expressly directed or permitted."

Appellant contends that the peculiar vice of the law lies in the fact that it attempts to delegate legislative powers to the district courts; and that in making and entering a judgment detaching land from a city, the court exercises a legislative rather than a judicial power. The constitutionality of the law and the consequent determination of this cause must turn upon the question of whether the power, conferred upon the district courts, of determining, in the manner prescribed, whether territory should be detached from the corporate limits of a municipality is a judicial or a legislative power. It is fundamental that if the court, in hearing and determining the matter, exercise legislative power, the law is in contravention of article 2, section 1, of the constitution, and is void, for it is well settled that the power to establish municipal corporations and to enlarge and contract their boundaries is purely and wholly legislative. (Dillon on Municipal Corporations, 5th ed., vol. 1, p. 61, sec. 33; 19 R. C. L. 700; 12 C. J. 856.) That the question is not easy of solution is evidenced by the fact that there appears to be a conflict in the authorities, statutes of the nature of the one in question here having been held valid and invalid under constitutional provisions almost identical with the sections above quoted and referred to.

It is a judicial function to hear a cause pending between adverse parties, to apply the law to the facts, and to make and render a judgment determining the rights of the parties. Does the law under consideration either authorize or permit the court to do more than this? It is generally conceded that while the legislature cannot delegate the power con-

ferred upon it by the constitution to legislate, the legislature can pass a law to become effective at some future time upon the determination of facts set forth in the law; and the legislature may delegate to the courts the power to determine the existence of the conditions prescribed in the law, upon which it will become effective. And if, in the enactment, the legislature vest no power in the courts other than to determine the existence of the facts set forth in the law itself, contingent upon the existence of which the law comes into operation, it does not constitute a delegation of legislative power. (*In re Fullmer,* 33 Utah, 43, 92 Pac. 768; *Town of Edgewater v. Liebhardt,* 32 Colo. 307, 76 Pac. 366; *City of Hutchinson v. Leimbach,* 68 Kan. 37, 104 Am. St. 384, 74 Pac. 598, 63 L. R. A. 630; *Young v. Salt Lake City,* 24 Utah, 321, 67 Pac. 1066; *City of Winfield v. Lynn* (Kan.), 57 Pac. 549; *Callen v. City of Junction City,* 43 Kan. 627, 23 Pac. 652, 7 L. R. A. 736; *Winkler v. City of Hastings,* 85 Neb. 212, 122 N. W. 858; *Borough of Belle Plaine v. Brenke,* 105 Minn. 84, 117 N. W. 157; *Hunter v. City of Tracy,* 104 Minn. 378, 116 N. W. 922; *Glaspell v. City of Jamestown,* 11 N. D. 86, 88 N. W. 1023; *Pelletier v. City of Ashton,* 12 S. D 366, 81 N. W. 735; *Boone County v. Town of Verona,* 190 Ky. 430, 227 S. W. 804; *Incorporated Village of Fairview v. Giffee,* 73 Ohio St. 183, 76 N. E. 865; *City of Galesburg v. Hawkinson,* 75 Ill. 152; *City of Burlington v. Leebrick,* 43 Iowa, 252; 12 C. J. 856, sec. 352.)

But where, in addition to a determination of the existence of the facts which bring the provisions of the law to bear upon the particular object, the law-making body has gone further, and has provided for an appeal to the courts from the decision of a body to which a legislative power has been delegated, or has authorized the court "in its discretion," or "if the court is of the opinion that the prayer of the petition should be granted" (and similar expressions), to grant or deny the relief, some courts hold that such legislative acts constitute an attempted delegation of a legislative power to the courts. (*Winkler v. City of Hastings, supra; Borough of Belle Plaine v. Brenke, supra; Glaspell v. City of*

*Jamestown, supra; City of Galesburg v. Hawkinson, supra.*)
However, a statute has been upheld in Utah, in *Young v.
Salt Lake City, supra,* and *In re Fullmer, supra,* which em-
powered the court to detach lands from a municipality upon
the ascertainment of certain facts and where "justice and
equity require."

Bearing in mind what appears to be the reason for the
conflict in the authorities on this question, it is proper to
examine the law under consideration to determine if it
constitute a delegation of legislative power. C. S., sec. 4101,
as amended, authorizes the owner of any tract of land of five
acres or more, used exclusively for agricultural purposes,
included within the corporate limits of any municipality, to
petition the district court to detach such lands from the
municipality. (C. S., sec. 4105, as amended, requires the
court to grant the prayer of the petition where the follow-
ing conditions or facts exist: (1) that the tract is at least
five acres in extent; (2) that the lands sought to be detached
are used exclusively for agricultural purposes; (3) that such
tract does not receive sufficient special benefits to justify
its retention within the municipality; and (4) that "by the
detachment of said lands the symmetry of the municipality
would not be materially marred." It is thus seen that there
are four facts or conditions which the court must find to exist
in order for the statute to apply. The statute provides that if,
upon a hearing, these facts be found to exist, " . . . .
the judge of said court *shall* grant the prayer of said
petition and *shall* enter judgment and decree accordingly."
(Italics ours.) This provision would appear to be manda-
tory. *Town of Edgewater v. Liebhardt,* 32 Colo. 307, 76
Pac. 366.) The statute does not vest the court with any
discretion in the matter other than to decide whether the
four facts or conditions exist. If the court find that such
facts exist, the law makes it the court's duty to render
judgment detaching the lands irrespective of what may be
the court's views as to the public policy or the justice of
the action required by the law. The discretion of the court
is restricted to a finding as to the existence of the facts.

But once the required facts are found to exist, the court has no further discretion to exercise, but must render judgment detaching the land from the limits of the municipality.

Counsel for appellant admits that had the law required the rendition of the judgment upon the ascertainment of the existence of the fact that the land sought to be detached contained at least five acres, and that it was used exclusively for agricultural purposes, it would have been a valid enactment; in other words, that the ascertainment of the size of the tract and its use is a proper matter for judicial ascertainment. But counsel contends that neither the ascertainment of whether the land receives sufficient special benefits to justify its retention within the municipality, nor whether the symmetry of the municipality would be materially marred by the detachment of the land, is a subject for judicial determination, but that their ascertainment involves the discretion of the court "as to what the policy as to 'special benefits' and as to municipal 'symmetry' shall be." The law does not require the court to determine any policy concerning special benefits or municipal symmetry. The court is required to find whether the particular tract *does* receive sufficient special benefits. This involves the determination of a fact. It is possibly difficult of determination, but many facts that the courts are daily called upon to determine are difficult of determination. Such an ascertainment, however, does not involve or determine any policy of special benefits, or what special benefits ought to consist of or amount to. The court merely finds, as an existing fact, whether the tract receives sufficient special benefits to justify its retention. What has been said about special benefits applies to "symmetry." In order for the statute to become effective, and for the relief prayed for in the petition to be granted, the court must find that by the detachment of the tract, "the symmetry of the municipality would not be materially marred." We are unable to comprehend how such a determination constitutes anything more than a finding of fact.

Appellant also insists that the provision of C. S., sec. 4104, which permits the court to view the lands sought to be de-

tached, as well as other lands within and without the munici-
pality, is another evidence that it is the discretion of the
court and not the legislative will that effects the detachment.
This provision permits the court to view the land, and pro-
vides that the judge " . . . . may consider such conditions
as he finds in connection with the evidence introduced on the
hearing, in making and arriving at his final decision and
determination of the matter." The language of this provi-
sion is permissive. In the consideration of this provision, it
must be understood that the statute defines the four facts or
conditions to be found by the judge before he is required
to or can render judgment detaching the land. This clause
enables the judge to view the lands so that he will thereby
be better able to determine the four questions of fact. An
actual view of the lands involved as well as neighboring
lands would better enable the court to determine whether the
land was used exclusively for agricultural purposes, the
size of the tract, the fact of special benefits, and the other
fact as to marring the symmetry of the municipality. We
are, therefore, constrained to hold that the provision merely
authorizes a view of the land to enable the court more cor-
rectly to determine the existence of the four facts mentioned
in C. S., sec. 4105, as amended.

A consideration of the decisions cited by appellant in
support of its contention that the act under consideration is
invalid will reveal the fact that they all, in one way or
another, recognize the right of the legislature to invest the
judiciary with power to determine whether certain pre-
scribed conditions or facts exist, on the determination of
which the law becomes effective. But the statutes construed
in the decisions cited by appellant attempted to vest the
court with a discretion to determine whether the property
should be attached to or detached from the city, instead of
merely authorizing the court to determine whether or not
the facts existed, as required by the law, to bring into effect
the provisions of the statute. The law under consideration
in the case at bar, however, goes no further than to vest the
court with power to hear the cause and determine the ex-

istence of the facts or conditions which the statute expressly provides must be found to exist before the legislative will applies and becomes effective. From a consideration of its terms, it is clear that our statute does not in any manner vest in the court anything more than a judicial discretion to hear the cause and determine the existence of the prescribed facts. Our law does not, as is true of some statutes held invalid, go so far as not only to vest the court with power to hear the cause and determine the existence of the required facts, but also to permit the court, "*in its discretion*," or "*if justice and equity require*," or "*if the court is of the opinion that the prayer of the petition should be granted*," to grant the relief prayed for. That there is a material difference in the extent of the grant of power to our courts by this enactment, and the power attempted to be granted to courts under many statutes held to be invalid, is plainly apparent. On the contrary, a reading of some of the foregoing decisions, notably the two decisions of the supreme court of Utah, will disclose the fact that that court went much further than we have to go to hold our law valid; for, as has been pointed out, the Utah statute was held valid although it empowered the court to grant the relief provided by the statute "if justice and equity require." No such delegation of power was attempted by our lawmakers. The legislature enacted the statutes under consideration to become effective upon the determination of the existence of the facts or conditions therein set forth; it merely delegated to the district courts the duty of determining the existence of such facts or conditions. We are of the opinion that the court, in the determination of the existence of the prescribed facts, and in the rendition of the judgment, exercises a judicial and not a legislative power.

The second reason urged by appellant for a reversal of the judgment is that the evidence is insufficient to establish the existence of the facts or conditions to be found before the court could render judgment detaching the land. It is clear from the record that respondent is a professional man residing on the property and practicing his profession

in the city of Payette. The property abuts on Sixth Street, on the opposite side of which there is a concrete sidewalk extending to the business portion of the city. City water is piped to the house, but is not used by respondent. There are two street lights in the immediate vicinity, and the street in front of the property, which is graded, is sprinkled by the city. There are also two fire hydrants which the city water superintendent testified were near enough to respondent's residence to afford fire protection. While respondent's house is not connected with the sewer, there is a sewer line laid in Sixth Street extending practically to one corner of the property, and which it would be possible to connect with respondent's house. There is, however, a conflict in the evidence as to whether the property receives sufficient special benefits to justify its retention within the corporate limits of the city, and we are not inclined to disturb the judgment of the court on this point.

A careful consideration of the entire record, however, leads to the conclusion that it does not appear "that by the detachment of said lands the symmetry of the municipality would not be materially marred." Upon this point we have before us, as exhibits, two maps of the city of Payette, one introduced by appellant and the other by respondent. The land in question has a frontage of 330 feet and a depth of 1,320 feet. There is also the testimony of the city engineer, called as a witness by respondent, who testified that, in his judgment, the detachment of the land "would mar the symmetry of the city very much," and that "it would only leave two very small, narrow necks connecting that part of the city north of this tract with the part south of it." There is no evidence from which the court could determine that the symmetry of the city would not be marred by the detachment of this tract other than that which might be gained from the two maps, and while it appears from the maps that the boundaries of the city are somewhat irregular, at the same time we are of the opinion that the evidence shows that the symmetry of the city would be materially marred by the detachment. The evidence not being sufficient, there-

fore, to establish the existence of all the facts required by the statute to exist in order to justify the rendition of the judgment, the judgment is reversed.   Costs to appellant.

McCarthy, C. J., and Budge and William A. Lee, JJ., concur.